# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICAH MAYS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:16-cv-00051-KOB-JHE |
| ) | |
| CORRECTIONAL OFFICER McLAURIN, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. (Doc. 14). The plaintiff names the following defendants in the amended complaint: Correctional Officer McLaurin; Captain Kenneth Peters; Correctional Officer Kenneth Patton; Correctional Officer Brian Fife; Lieutenant William R. Northcutt; Correctional Officer McMillian; Correctional Officer Short; and Doctor King. (*Id.* at 5). The plaintiff seeks compensatory and punitive damages. (*Id.* at 7). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon

which relief can be granted.  *Id.*  Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist.  *Id.* at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted.  A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Twombly,* 550 U.S. at 555, 557, (alteration incorporated).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).  However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. Factual Allegations

The plaintiff is an inmate at the St. Clair Correctional Facility in Springville, Alabama. His complaint stems from events occurring at that facility on December 30, 2015. (Doc. 14). While awaiting escort to his assigned living quarters after a segregation review board meeting, the plaintiff spoke with Correctional Officer McMillian concerning Correctional Officer McLaurin's "erratic behavior;" suggesting that McLaurin was "dangerous" to restrained inmates. (*Id*. at 5). As the plaintiff and another inmate (Agee) were being escorted back to their quarters, Agee was "attacked" by McLaurin, requiring other officers to intervene. (*Id*.). Despite being told by other officers to leave the inmates alone, McLaurin continued to taunt and threaten them as they were being escorted back to their unit. (*Id*.).

Once inside the unit, the plaintiff and Agee went to their respective cells and waited for officers to release them from their restraints and close their cell doors. (Doc. 14 at 6). At this point McLaurin again attacked inmate Agee as he waited in his cell, requiring Officers Patton and Fife to come to his aid. (*Id*.). While the officers' attention was averted, McLaurin then went to the plaintiff's cell and attacked him while he was still restrained, knocking him to the ground and beating him with his fists. (*Id*.). McLaurin then grabbed the plaintiff's head and started slamming it into the concrete floor and wall until he was unconscious. (*Id*.).

The plaintiff now contends that McLaurin is guilty of using excessive force in violation of his Eighth Amendment rights, and that Officers McMillian, Short, Patton, and Fife "could have stopped the events that transpired on December 30, 2015." (Doc. 14 at 6). He also complains that Captain Peters should have intervened after witnessing a verbal confrontation between himself and McLaurin; asserting that "it is Peters' job to do so." (*Id*.). Additionally, the plaintiff contends that Lieutenant Northcutt violated his due process rights by finding him guilty of a disciplinary

infraction "in an attempt to cover up the misdeeds of [Officer] Mclaurin." (*Id*.). Finally, the plaintiff complains that Dr. King, who is identified as the St. Clair Infirmary dentist, "is attempting to cover up the amount of damage" he sustained by failing to provide him with a copy of the "body chart" for use in this action.

### III. Analysis

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320. In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).

Applying these standards to the facts set forth in the amended complaint, it is clear that the plaintiff has initially stated a claim of excessive force against Officer McLaurin. Based upon the allegations in the complaint, the plaintiff had not caused a disturbance and was not acting in a threatening manner towards the officer, but instead was simply waiting in his cell to be released from restraints. It therefore appears the plaintiff could not have reasonably been considered a threat to Officer Mclaurin at the time force was applied, and there was no need for the use of force on the occasion made the basis of the complaint, much less to the extent administered by defendant McLaurin. Additionally, the plaintiff has alleged more than *de minimis* injury resulting from the

encounter with the officer.[1]  Accordingly, the undersigned recommends the excessive force claim against Officer McLaurin be referred to the undersigned for further proceedings.

The gist of the plaintiff's claim against defendants McMillian, Short, Patton, and Fife is that they failed to intervene to prevent McLaurin's excessive force. However, in order for these defendants to become liable, it would have to be shown they were actually "in a position to intervene." *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (*citing Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994)).  In other words, unless a guard has a "realistic opportunity" to prevent an attack, he or she cannot be held liable under § 1983. *Thompson*, supra.

In this instance, there is no allegation that McMillian or Short were in the vicinity when McLaurin attacked the plaintiff.  Therefore, there are no allegations which plausibly show they were in a position to intervene.  Furthermore, they cannot be held liable on the theory they failed to intervene at an earlier point when McLaurin was taunting and threatening the plaintiff and inmate Agee.  As this court recently recognized, it "is doubtful that the Eleventh Circuit recognizes 'failure to intervene' claims outside the context of the Eighth Amendment's excessive force prohibition." *Whitehurst v. Harris*, 2015 WL 71780 at *7 (N.D. Ala. Jan. 5, 2015) (*citing Jones v. Cannon*, 174 F.3d 1271, 1285-86 (11th Cir. 1999)).[2]  In other words, in order to state a valid claim for failure to intervene, the plaintiff must allege facts which demonstrate the defendants failed to stop McLaurin's *physical attack,* not some other constitutional violation McLaurin may have

---

[1] In the original complaint, the plaintiff indicated he suffered from an injury to his lower lip requiring stitches, a cracked tooth, and pain in his head, neck and mouth area. (Doc. 1 at 8-9). He also continues to suffer from "blinding" migraine headaches and uncontrollable "popping sounds" in his mouth. (*Id*. at 9).

[2] The Middle District of Florida reached a similar conclusion in September 2014, stating that liability for failure to intervene has "within the Eleventh Circuit . . . been limited to excessive force cases." *Tarantino v. Citrus County Government*, 2014 WL 4385550 at *10 (M.D. Fla. Sept. 4, 2014). Likewise the Middle District of Georgia in *Jones v. Edmond*, 2014 WL 5801536 at *6 (M.D. Ga. Nov. 7, 2014).

5

committed prior thereto. At the very least, it seems clear that absent case law which establishes a "bright line" in that regard, the defendants would be entitled to qualified immunity. *See Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997).[3]

Although it appears from the wording of the complaint that Patton and Fife were nearby, the plaintiff's own statements belie a finding that they deliberately failed to intervene. He states in the amended complaint that it was when Patton and Fife "turned their attention to Agee," that McLaurin was "[given] the opportunity" to attack him. (Doc. 14 at 6). By the plaintiff's own words, McLaurin was able to begin his attack because of Patton and Fife's diverted attention, not their refusal to intervene. More importantly, the plaintiff acknowledges that Patton and Fife actually did intervene on his behalf, albeit too late to prevent his injuries. (*Id*.)[4] As mentioned above, "a police officer cannot be held liable for failing to intercede if he has no *realistic opportunity* to prevent an attack." *Thompson*, 33 F.3d at 857 (quoting *Gaudreault v. Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990)). It seems clear, therefore, that the plaintiff cannot base his claim on the mere fact that Patton and Fife failed to *successfully* intervene.[5]

The plaintiff's only allegation against Captain Peters is that he "witnessed the verbal altercation between the inmate and the defendant COI McLaurin and refused to get involved even

---

[3] In *Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012), the Eighth Circuit, citing *Jones v. Cannon*, supra, recognized the lack of clearly established law with regard to an officer's duty to intervene in constitutional violations *other than* excessive force. *Id.* at 360.

[4] The plaintiff states he was told it "[took] two COI's (Patton and Fife, supra) to pull COI McLaurin off of the top of [his] lifeless body." (Doc. 14 at 6).

[5] In *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), the Eleventh Circuit reversed the District Court's denial of qualified immunity at the summary judgment stage to a defendant police officer where there was "no evidence from which a reasonable jury could find that [the defendant officer] *could have anticipated and then stopped* [another officer] from punching [an arrestee] in the stomach." *Id.* at 1331 (emphasis added). The court emphasized that the non-intervening officer must be 'in a position to intervene" before liability may attach. Here, the plaintiff alleges no specific facts which demonstrate Patton and Fife were in a position to intervene any earlier than they actually did.

though it is [his] job to do so." (Doc. 14 at 6).  Not only are these assertions entirely too vague to state a claim of constitutional proportion, but as discussed above, a failure to intervene claim only applies in the excessive force context, not with regard to verbal altercations.  Furthermore, to the extent the plaintiff asserts this claim based upon Captain Peters' supervisory position, it is without merit.  It is well settled that "[t]here is no *respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978) and *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993)).  Therefore, absent a plausible showing that Captain Peters was somehow causally connected to a subordinate's constitutional violation, he cannot be liable for the subordinate's misdeeds.

Lt. Northcutt is mentioned nowhere in the amended complaint's factual allegations other than the vague statement that he "violated [the plaintiff's] due process rights by finding [the plaintiff] guilty of a disciplinary violation . . . in an attempt to cover up the misdeeds of McLaurin." (Doc. 14 at 6).  These vague and conclusory assertions are alone insufficient to state a plausible constitutional claim.  Furthermore, in the context of prison disciplinary actions, the Supreme Court has concluded that prisoners are not entitled to due process protection in proceedings wherein the disciplinary punishment does not result in a dramatic departure from the ordinary conditions of prison life. *Sandin v. Conner*, 515 U.S. 472 (1995).  Therefore, under the authority of *Sandin*, the plaintiff was not entitled to procedural due process protections absent a showing that he suffered disciplinary punishment which resulted in a dramatic departure from the ordinary conditions of prison life.  He makes no such showing here.

Furthermore, to the extent the allegations against Lieutenant Northcutt can be construed as a claim of conspiracy, they are without merit.   While it is true that conspiracy to violate another person's constitutional rights can result in liability under 1983, *Rowe v. City of Fort Lauderdale*,

7

279 F.3d 1271, 1283 (11th Cir. 2002), the "naked assertion" of conspiracy without "supporting operative facts" is not sufficient to state a claim. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  Therefore, allegations of conspiracy must be specific and based upon facts rather than conclusions.  "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984).[6]  Accordingly, "[a] complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Id*.

Finally, the plaintiff has failed to state a plausible claim against the defendant identified as Dr. King.  As with Lieutenant Northcutt, Dr. King is mentioned nowhere in the factual paragraphs of the complaint, but is vaguely accused in the "Legal Claims" section of attempting to "cover up the amount of damage" to the plaintiff's body. (Doc. 14 at 6).   For the same reasons cited in the discussion above, this vague accusation falls far short of stating a claim of conspiracy.  Furthermore, there are simply no specific factual allegations pointing to medical deliberate indifference on the part of Dr. King.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the excessive force claim against Officer McLaurin, be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted.  The undersigned **FURTHER RECOMMENDS** the remaining excessive force claim against Officer McLaurin be **REFERRED** to the undersigned for further proceedings.

## V. Notice of Right to Object

---

[6] A complaint must contain "particularized allegations" that a conspiracy existed. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998).

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

DONE this 28th day of November, 2016.

  _____
  **JOHN H. ENGLAND, III**
  UNITED STATES MAGISTRATE JUDGE